IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ERNESTINE LIKELY
and JASON PARKER,
    Plaintiffs,

vs.                                              Case No.: 3:13cv517/MCR/EMT

JASON VERSCHUEREN,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

    This cause is before the court on Plaintiffs' Amended Complaint filed pursuant to 42 U.S.C. § 1983 (doc. 8). Plaintiff Likely was granted leave to proceed in forma pauperis (doc. 5).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Plaintiffs, it is the opinion of the undersigned that dismissal of this action is warranted.

I.    BACKGROUND

    Plaintiffs, proceeding pro se, bring this civil rights action against Jason Verscheuren, an attorney with the Florida Department of Children and Families ("DCF") (doc. 8). The Amended Complaint, which is the operative pleading, alleges Plaintiff Likely's child was removed from her custody by DCF, and she was required to perform tasks outlined in a case plan as a condition to her regaining custody (*id.* at 3). The complaint alleges Ms. Likely completed a first aid class and a CPR class, and had only one more class to complete, specifically a "CMS" class (*id.*). The complaint states Ms. Likely's court-appointed attorney "labeled" her incompetent, but she is not incompetent

(*id.*).[1] She is, however, "mildly mentaly [sic] slow" and "is a Categore [sic] 6," which is "the lowest form of disable [sic] there is" (*id.*). The complaint alleges Ms. Likely is on a fixed income, and all of the tasks in her case plan required the expenditure of funds (*id.*). The complaint further alleges Ms. Likely gave birth to another child during the course of the dependency proceedings concerning her first child, but the baby was returned to Ms. Likely's custody because she completed her case plan as to that child (*id.*). The complaint alleges Ms. Likely's opportunity to speak during the dependency proceedings was limited, and she did not have an advocate to explain her case plan to her (*id.*). Plaintiffs allege at the time they commenced the instant civil rights action, Ms. Likely's court-appointed attorney had filed an appeal in the dependency proceeding (*id.*).

Plaintiffs claim that Ms. Likely was treated unfairly in the dependency proceeding, and deprived of her right to custody of her child (doc. 8 at 4). Because Plaintiffs are proceeding pro se, the court liberally construes this claim as asserting a federal due process challenge to the state dependency proceedings. Ms. Likely and Mr. Parker request an order from this court extending the deadline for Ms. Likely to complete the case plan and regain custody of her child (*id.*).

II. ANALYSIS

The court will first address Plaintiff Jason Parker's standing to sue. To establish standing, Mr. Parker must satisfy three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal citations omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. *See* FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603

---

[1] Florida law provides that parents have the right to be represented by counsel in child dependency proceedings, and, if indigent, the right to be represented by appointed counsel. *See* Fla. Stat. §§ 39.013(1), (9)(a), 39.402(5)(b)2. Plaintiffs refer to Ms. Likely's court-appointed attorney as a "public defender."

Case No.: 3:13cv517/MCR/EMT

(1990); Warth v. Seldin, 442 U.S. 490, 508, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Because they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, that is, with the manner and degree of evidence required at the successive stages of the litigation. *See* Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883–89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 114–115 & n.31, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 45 n.25, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976). For the purpose of ruling on a motion to dismiss for want of standing, the court must accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party. Warth, 422 U.S. at 501 (citations omitted). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, because on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." Nat'l Wildlife Fed'n, 497 U.S. at 889 (citation omitted).

In the instant case, the factual allegations of the Amended Complaint do not suggest Jason Parker has any legal interest in custody of the child who was the subject of the dependency proceeding, or that he suffered an invasion of any other legally protected interest as a result of Defendant Verschueren's conduct.[2] Therefore, the allegations fail to suggest Mr. Parker suffered an "injury in fact" to support standing to sue. *See, e.g.*, Cooper v. Okaloosa Cnty., No. 3:07cv59/MCR/EMT, 2007 WL 3306669, at *10 (N.D. Fla. Nov. 5, 2007) (unpublished) (pro se plaintiff lacked standing to bring federal civil rights claims based upon defendants' removal of her grandchildren from her daughter's custody). Accordingly, Jason Parker is not a proper party to this action.

Additionally, this cause of action is subject to dismissal pursuant to the Younger abstention doctrine. This doctrine, announced in Younger v. Harris, 401 U.S. 37 (1971), reaffirmed the "strong federal policy against federal-court interference with pending state judicial proceedings." Middlesex

---

[2] The only factual allegations concerning Mr. Parker are that he assisted Ms. Likley in obtaining a copy of her case plan and explained the case plan to her (doc. 8 at 3).

Case No.: 3:13cv517/MCR/EMT

Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).  Abstention is not in order simply because a pending state-court proceeding involves the same subject matter.  *See* New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed .2d 298 (1989) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.").  The Supreme Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.  *See id.* at 368.

Younger exemplifies one class of cases in which federal-court abstention is required:  When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.  Although Younger itself involved a parallel, pending state criminal proceeding, the Supreme Court has extended abstention to particular state civil proceedings that are akin to criminal prosecutions.  The "pathmarking decision" applying Younger to bar federal relief in certain civil actions is Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975).  *See* Sprint Commc'n, Inc. v. Jacobs, No. 12-815, 2013 WL 6410850, at *6 (U.S. Dec. 10, 2013).  In Huffman, Ohio officials brought a civil action in state court to abate the showing of obscene movies in Pursue's theater.  Because the State was a party and the proceeding was "in aid of and closely related to [the State's] criminal statutes," the Court held Younger abstention appropriate.  420 U.S. at 604.

In New Orleans Pub. Serv., Inc., the Court had occasion to review and restate its Younger jurisprudence.  491 U.S. at 368.  That case addressed and rejected an argument that a federal court should refuse to exercise jurisdiction to review a state council's ratemaking decision.  "[O]nly exceptional circumstances," the Court reaffirmed, "justify a federal court's refusal to decide a case in deference to the States." *Id.*  Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings.  First, Younger precluded federal intrusion into ongoing state criminal prosecutions.  *See* New Orleans Pub. Serv., Inc., 491 U.S. at 368.  Second, certain "civil enforcement proceedings" warranted abstention. *Id.* (citing, *e.g.*, Huffman, 420 U.S. at 604); *see also* Middlesex Cnty Ethics Comm., 457 U.S. at 433–34 (applying Younger to bar federal court from entertaining lawyer's challenge to a state ethics committee's pending investigation of the lawyer; state ethics committee's hearing was plainly "akin to a criminal

proceeding" in that it was preceded by an investigation and formal complaint, an agency of the State initiated the hearing, and the hearing's purpose was to determine whether the lawyer should be disciplined for failing to meet the State's professional conduct standards). Third, federal courts refrained from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." New Orleans Pub. Serv., Inc., 491 U.S. at 368 (citing Juidice v. Vail, 430 U.S. 327, 336, n.12, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977); Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)).[3] The Supreme Court has not applied Younger outside these three "exceptional" categories, and in Sprint Commuc'n, Inc., 2013 WL 6410850, at *6, the Supreme Court held that the three categories define Younger's scope.

In Florida, a dependency proceeding is preceded by an investigation and filing of a dependency petition by DCF, the State's child protective services agency. *See* Fla. Stat. §§ 39.01–.0139, 39.301–.308, 39.501–.507. The parent has the right to be represented by counsel at each stage of the proceedings. *Id.* § 39.013. An arraignment hearing must be held no later than 28 days after the child has been sheltered by order of the court or within 7 days after the date of filing a dependency petition, for the child's parent or legal custodian to admit, deny, or consent to (in the nature of a "no contest" plea) a finding that the child is dependent (meaning, the child has

---

[3] In Juidice, plaintiffs, who were held in contempt by state court judges for disobeying subpoenas to appear in supplemental proceedings brought by judgment creditors in an attempt to collect a judgment, brought a class action seeking injunctive relief. The Supreme Court held that a state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, was of sufficiently great import to require application of the abstention doctrine. 430 U.S. at 335–36.

In Pennzoil Co., Pennzoil obtained a jury verdict of $10.53 billion in a state court suit alleging that Texaco tortiously induced a third oil company to breach a contract to sell its shares to Pennzoil. 481 U.S. at 4. While the state civil action was pending, Texaco filed an action in federal district court alleging the state court proceedings violated its rights under the Constitution and various federal statutes. *Id.* at 6. Texaco asked the federal court to enjoin Pennzoil from taking any action to enforce the judgment, and the court entered a preliminary injunction doing so. *Id.* The Supreme Court held that there was little difference between the state interests present in Juidice (that is, the State's interest in forcing persons to respond to the court's process on pain of contempt) and the State's interest in forcing persons to transfer property in response to a court's judgment—both cases involved challenges to the processes by which the State compels compliance with the judgments of its courts. *Id.* at 13–14. The court concluded, "Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained. So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.* at 14.

Case No.: 3:13cv517/MCR/EMT

been abandoned, abused, or neglected by the child's parent or parents or legal custodian, *see id.* § 39.01(15)(a)) based upon the allegations in the dependency petition. *Id.* § 39.506. If the parent admits or consents to a finding of dependency, the court shall conduct a disposition hearing within 15 days after the arraignment hearing. *Id.* If the parent does not admit or consent to a finding a dependency, an evidentiary adjudicatory hearing must be held within 30 days. *Id.* §§ 39.506, 39.507. If the facts alleged in the dependency petition are proven in the adjudicatory hearing and the child is determined to be dependent, the state court enters an order adjudicating the child dependent. *Id.* § 39.507. The court then holds a disposition hearing within 30 days. *Id.* §§ 39.507, 39.521. DCF must prepare a written case plan and a predisposition study and file these items with the court no later than 72 hours before the disposition hearing. *Id.* § 39.521.

The case plan is a document that "follows the child from the provision of voluntary services through any dependency, foster care, or termination of parental rights proceeding or related activity or process." *Id.* § 39.01(11). The case plan must be developed in a face-to-face conference with the parent. *Id.* § 39.6011. It must include, among other items, a description of the permanency goal for the child, a description of the type of home or institution in which the child is to be placed, a discussion of the safety and appropriateness of the child's placement, the services to be provided to the parent and the tasks the parent must complete (including the time frames for achieving the objective of the case plan), the services that the child needs and will receive, and a description of the visitation rights of the parents. *Id.* §§ 30.6011, 39.6012. After the case plan has been agreed upon and signed by the parties, a copy of it must immediately be given to the parties. *Id.* § 39.6011. The case plan must be approved by the court. *Id.* § 39.603. It may be amended if all the parties agree and the court approves, or after a hearing it may be amended by the court on its own motion or that of a party, based on competent evidence that demonstrates the need for an amendment. *Id.* §§ 39.6013, 39.603. If at the hearing on the case plan, which occurs in conjunction with the disposition hearing, the court determines that any of the elements required in the plan are not present, it can order DCF to amend the plan to include what is necessary. *Id.*

The state court has continuing jurisdiction over a dependency case and reviews the child's status at least every 6 months. *Id.* § 39.701. Prior to the review hearing, DCF must furnish to the court a written report that includes, among other items, a description of the placement of the child,

its appropriateness, the safety of the child, the number of placements, documentation of the efforts of all parties to comply with the case plan, the number of times the child's educational placement has been changed, and copies of all medical and psychological records that support the terms of the case plan. *Id.* At the review hearing, the court considers the child's situation, including whether there has been compliance with the case plan, the appropriateness of the child's current placement, and whether the child is in a setting that is family-like and consistent with the child's best interests and special needs. *Id.* The court must return the child to the custody of the parents at any time it determines that they have substantially complied with the case plan, if the court is satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health. *Id.* If DCF has not complied with the case plan, the court may find it in contempt, order it to submit its plans for compliance with the case plan, and require it to show why the child could not safely be returned to the home of the parents. *Id.*

The dependency statutes expressly states, "Time is of the essence for permanency of children in the dependency system." Fla. Stat. § 39.621(1). No later than 12 months after the date that the child is placed in shelter care, the court must conduct a judicial review to plan for the child's permanent placement. *Id.* If the child is not returned to a parent, the case plan must document steps DCF is taking to find an adoptive parent or other permanent living arrangement for the child. *Id.* Any party to the dependency proceeding who is affected by an order of the court may appeal to the appropriate district court of appeal. *Id.* § 39.510.

Here, the injunctive relief sought by Plaintiffs against DCF, specifically an extension of the deadline for Ms. Likely to complete the case plan task and possibly regain custody of her child, would interfere with the dependency court's orders in furtherance of its performance of the judicial functions within the time frames set forth in Florida's dependency statutes, including reaching permanency for the child within 12 months. So long as the dependency proceeding is pending in the state courts,[4] proper respect for the ability of the Florida courts to resolve Ms. Likely's challenge to the dependency process, mandates that the federal court stay its hand.

---

[4] As previously noted, the complaint alleges an appeal was pending in the state dependency case at the time Plaintiffs commenced this federal action on September 23, 2013.

Case No.: 3:13cv517/MCR/EMT

Based upon the foregoing, dismissal of this action is warranted.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Jason Parker be **DISMISSED** as a plaintiff from this action.

2. That this action be **DISMISSED without prejudice** for lack of jurisdiction, pursuant to Younger v. Harris, 401 U.S. 37 (1971).

3. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 19th day of December 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**